## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

CHANEL, INC.,                          )
                                       )
            Plaintiff,                 )
                                       )
v.                                     )          Case No. 07-2502-KGS
                                       )
MINRAN PU d/b/a 100IBUY.COM            )
d/b/a 100IBUY d/b/a 100IBUY CO. LMT.   )
d/b/a USAEBUY.COM INC. d/b/a           )
USAEBUY.COM,                           )
                                       )
            Defendant.                 )

## ORDER

This matter comes before the court on Plaintiff's Motion for Summary Judgment (Doc.

19).  Specifically, plaintiff requests that the court render summary judgment on Counts I, II, III,

and IV of plaintiff's Complaint (Doc. 1), which allege federal trademark infringement and

counterfeiting pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; false designation

of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law

trademark infringement; and common law unfair competition, respectfully.  Defendant has filed

a response opposing plaintiff's motion (Doc. 25), and plaintiff has replied in support of its

motion for summary judgment (Doc. 27).  Therefore, the issues are fully briefed and the court is

prepared to rule.[1]

## I.    Summary Judgment Standard

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

[1] The parties have consented to the exercise of jurisdiction by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to conduct any and all proceedings in this case, including the trial, order the entry of final judgment, and all post-judgment proceedings.  *See* Consent to Jurisdiction by US Magistrate Judge and Order (Doc. 8).

as to any material fact and that the movant is entitled to judgment as a matter of law."  The court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[2]  An issue is considered genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[3]  An issue of fact is considered material "if under the substantive law it is essential to the proper disposition of the claim."[4]  If a movant carries its initial burden of making a prima facie demonstration that there is an absence of a genuine issue of material fact and it is entitled to judgment as a matter of law, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of a trial from which a rational trier of fact could find for the nonmovant."[5]  The non-moving party may not rest on mere allegations or denials in its response in opposition to summary judgment, but "must set forth specific facts showing that there is a genuine issue for trial."[6]  The mere existence of some alleged factual dispute between the parties will not defeat a properly supported motion for summary judgment.[7]  Also, in a response to a motion for summary judgment, "a non-moving party cannot rely on ignorance of facts, on speculation, or on suspicion, and may not escape summary judgment on the mere hope that something will turn up at trial."[8]

---

[2] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[3] *Id.*

[4] *Id.*

[5] *Id.* at 670-71.

[6] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[7] *Id.*

[8] *Zapata v. IBM, Inc.,* 1998 U.S. Dist. LEXIS 21702 *17 (D. Kan. September 29, 1998)(citing *Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1988)).

Where the nonmoving party fails to properly respond to the motion for summary judgment, the facts as set forth by the moving party are deemed admitted for purposes of the summary judgment motion.[9]  In this case, defendant's response to plaintiff's motion for summary judgment (Doc. 25) fails to provide the court with a "section that contains a concise statement of material facts as to which the party contends a genuine issue exists."[10]  As a result, "All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment[.]"[11] Additionally, the court finds any additional facts asserted by defendant Pu in her response brief raise no genuine issue of material fact that would preclude an order granting summary judgment for defendant.

## II.    Facts

Plaintiff Chanel is the sole owner of all rights in and to nine federally registered trademarks.  They include:

- Registration No. 1,734,822, registered November 24, 1992, for leather goods, including handbags and wallets

- Registration No. 1,314, 511, registered January 15, 1985, for leather goods, including handbags and wallets

- Registration No. 3,022,708, registered December 6, 2005, for various items, including key chains and handbags

- Registration No. 3,025,934, registered December 13, 2005, for handbags

---

[9]D. Kan. R. 56.1(a).

[10]D. Kan. R. 56.1(b).

[11]D. Kan. R. 51(a) ("All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of opposing party.").

3

- Registration No. 0,626,035, registered May 1, 1956, for handbags

- Registration No. 1,347,677, registered July 9, 1985, for leather goods, including handbags and wallets

- Registration No. 1,733,051, registered November 17, 1992, for leather goods, including handbags and wallets

- Registration No. 1,501,898, registered August 30, 1988, for various items, including key chains

- Registration No. 3,025,936, registered December 13, 2005, for various items, including eyeglasses

Genuine Chanel products are marketed and sold at Chanel boutiques throughout the United States and via the Internet.  Chanel has spent hundreds of millions of dollars to advertise and promote its goods bearing the Chanel marks.  Chanel marks have acquired fame in the consumer market for a wide variety of products, including high quality handbags, wallets, key chains, eyeglass frames, and other goods.  Goods bearing the Chanel marks have garnered sales well into the hundreds of millions of dollars.  The Chanel marks are symbols of Chanel's quality, reputation, and goodwill and have never been abandoned.  No other company in the world lawfully uses the Chanel marks or any substantially similar marks in connection with the manufacture, sale, and/or distribution of handbags, wallets, key chains, or eyeglass frames.

The defendant directly participates in, and is the active and controlling force behind websites operating under the domain names 100ibuy.com and usaEbuy.com.  The domain name 100ibuy.com was registered on January 12, 2007 by Minram Pu, 1700 Ellis Drive, Apt. 7, Lawrence, KS 66044.  The domain name for usaEbuy was registered on April 13, 2007 by

Minram Pu, 1700 Ellis Drive, Apt. 7, Lawrence, KS 66044.  The internet website operating

under the domain name 100ibuy.com instructs customers who are interested in paying for items

purchased on the website by check or money order to send payments to: Minram Pu, 1700 Ellis

Drive, Apt. 7, Lawrence KS 66044.

Both 100ibuy.com and usaEbuy.com promoted, displayed, sold, and offered for sale

goods, including handbags, wallets, key chains, and eyeglass frames bearing Chanel marks.

Defendant's goods are virtually indistinguishable from Chanel goods when comparing the label,

size, color scheme, printing and design. On April 13, 2007, Chanel's investigator Robert Holmes

accessed the Internet website operating under the domain name 100ibuy.com and placed an order

for the purchase of a Chanel branded wallet for $52.50, including shipping.  Payment by Mr.

Holmes was made via a debit/credit card and the payee was identified as "100IBUY 785-727-

9610 KS US." In reference to his purchase, Mr. Holmes received a phone call from the telephone

number identified in the payee information and spoke with a female who identified herself as

Minram Pu, 1700 Ellis Drive, Apt. 7, Lawrence, KS 66044.

On May 21, 2007, Mr. Holmes received a package containing the Chanel branded wallet

he purchased from 100ibuy.com and the shipping label on the outer package identified Minram

Pu, 1700 Ellis Drive, Apt. 7, Lawrence, KS 66044-3397 as the shipper.  The package was

postmarked from China.  The wallet Mr. Holmes purchased was analyzed by a Chanel

representative, Adrienne Hahn Sisbarro, who is familiar with Chanel's goods and trained to

detect counterfeits, and was determined to be a non-genuine Chanel product.  Ms. Hahn Sisbarro

also reviewed printouts reflecting the various Chanel branded goods offered for sale on the

internet websites 100ibuy.com and usaEbuy.com and concluded they were non-genuine Chanel

products.

At all times relevant, defendant has been on constructive and actual notice of Chanel's ownership of Chanel marks and has never been assigned or licensed any rights to use the Chanel marks for any purpose. On June 5, 2007, Chanel representative Lynnette Oka sent a cease and desist letter to defendant via certified mail and email to service@100ibuy.com, puminram@yahoo.com.cn, puminram@hotmail.com, and puminram@ku.edu. The letter requested that defendant cease all sales of products bearing counterfeit Chanel marks. On the same day, Ms. Oka received a response to her letter from defendant using the electronic email address "Minram Pu" <puminram@hotmail.com> sent by puminram@gmail.com, which read, "We currently not selling any Chanel products on our website. Thanks for reminding us the trademark right issue for selling items online." On June 18, 2007, Ms. Oka replied by email to the June 5, 2007 correspondence, and informed defendant that Chanel branded goods were still appearing on the 100ibuy.com website and requested defendant remove all improper references to Chanel from her website. Thereafter, defendant continued selling and offering for sale products bearing counterfeits of Chanel marks.

### III.   Contentions

Plaintiff has moved for summary judgment on each of the four counts set forth in its complaint: trademark infringement and counterfeiting, pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114; false designation of origin pursuant to Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); common law trademark infringement; and common law unfair competition.[12]

---

[12] *See* Complaint (Doc. 1).

Defendant's response to plaintiff's motion for summary judgment does not contain any citations to law, nor is it accompanied by any affidavits or other evidence allowed under Fed. R. Civ. P. 56.  Thus, it does not set out any specific facts to establish a genuine issue of material fact.  Under Fed. R. Civ. P. 56(e)(2), "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading."  At best, Defendant's response denies (without any evidentiary support) that she is the individual operating the websites in question, as she claims she is the victim of identity theft. Her response consists mostly of hypothetical questions and denials of certain activities including that: she did not register and run the websites in question, she did not call investigator Holmes about an online business, she did not mail any product sold by the websites, she did not receive payment from any customers of the websites, and she is not the owner of the e-mail accounts Chanel contacted regarding the Web sites.[13]

## IV.    Count I – Trademark Counterfeiting and Infringement

Congress has defined a trademark as "any word, name, symbol, or device, or any combination thereof . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown.[14]  Plaintiff Chanel has brought a federal trademark counterfeiting and infringement claim under 15 U.S.C. § 1114, which prohibits the unauthorized use of a counterfeit or imitation of the registered mark likely to cause confusion in the marketplace concerning the source of the different products.

---

[13] *See* Response by Defendant Minran Pu re Motion for Summary Judgment (Doc. 25).

[14] 15 U.S.C § 1127.

To prevail on its trademark counterfeiting and infringement claim under 15 U.S.C. § 1114, plaintiff must demonstrate that (1) it has valid and protected trademarks, (2) defendant used similar marks in commerce, and (3) defendant's use of the marks is likely to cause confusion.[15]

### A.      Valid and Protected Trademark

Plaintiff has demonstrated that it is the sole owner of nine federally registered trademarks through its affidavits and accompanying exhibits.  Defendant does not dispute this fact.  Plaintiff has never assigned or licensed any of the Chanel trademarks to defendant, nor has it ever abandoned the trademarks at issue.[16]  Accordingly, the court finds plaintiff has established it possesses valid and protected trademarks.

### B.      Use of a Similar Mark in Commerce

Plaintiff alleges defendant marketed goods bearing similar marks to Chanel's marks by operating websites under the domain names 100ibuy.com and usaEbuy.com.[17]  The websites allegedly promoted, displayed, offered for sale and sold goods bearing the Chanel trademarks.[18]  Plaintiff offers documentation that both domain names were registered to defendant at her Lawrence address.  Plaintiff also submits evidence that the website 100ibuy.com listed defendant Pu as the payee for checks and money orders.  Payment by Mr. Holmes was made via debit/credit card and the payee was identified as "100IBUY 785-727-9610."  Mr. Holmes also

---

[15] *Hodgdon Powder Co. v. Alliant Techsystems, Inc.*, 497 F. Supp. 2d 1221, 1229 (D. Kan. 2007).

[16] Complaint (Doc. 1) at 4.

[17] Plaintiff's Memorandum in Support of its Motion for Summary Judgment (Doc. 19) at 5.

[18] *Id.* at 5-7.

received a phone call from phone number 785-727-9610 and spoke to a female who identified herself as Minram Pu.

Defendant claims that her identity has been stolen and that she is a purely innocent party. Specifically, she denies that she operated either website in question; ever spoke with Mr. Holmes; mailed any product purchased from 100ibuy.com or usaEbuy.com; received payment from the sale of goods on the websites; or owned the email accounts used in this case. Defendant does not, however, provide any affidavits or any evidence to support her blanket denials. For example, defendant has failed to bring forth evidence that she reported her alleged identity theft to the authorities or her credit card providers. She also fails to produce documentation such as telephone bills or banking records to support her claims that she never spoke with Mr. Holmes or received profits from the websites. Thus, defendant has chosen to rely merely on her denials and failed to set forth specific facts showing that there is a genuine issue for trial. Moreover, plaintiff's allegations are unsupported by affidavits, deposition testimony, answers to interrogatories, or answers to admissions as required by Fed. R. Civ. P. 56(e)(2). As a final note, the court finds it probative that the telephone number which defendant denies using and is listed in the payee information for debit/credit cards is the same telephone number that the court used to contact defendant during various telephone conference calls. The court can only deduce that at all relevant times defendant was in fact the owner of this number. Accordingly, based on the evidence in the record, the court finds that defendant used similar marks in commerce.

### C.      Likelihood of Confusion

"The key inquiry in a trademark infringement case is the likelihood of confusion between

two similar marks."[19]  While the likelihood of confusion in a trademark infringement claim is a

question of fact, it is amenable to summary judgment in appropriate cases.[20]  The court looks to

six factors used together to determine the likelihood of consumer confusion: (1) the degree of

similarity between the marks, (2) the intent of the alleged infringer in adopting its mark, (3)

evidence of actual confusion, (4) the relation in use and the manner of marketing between the

goods or services marketed by the competing parties, (5) the degree of care likely to be exercised

by purchasers, and (6) the strength or weakness of the marks.[21]  No single factor is

determinative; they must all be considered together.  At all times, the court's focus is whether the

similarity of the marks is likely to deceive or confuse the consumer.[22]

### 1.    Degree of Similarity Between the Marks

The degree of similarity is measured by the sight, sound, and meaning of the marks,

which are examined "in the context of the marks as a whole as they are encountered by

consumers in the marketplace."[23] The court does not compare the marks side-by-side, but rather

considers whether the alleged infringing mark will be confusing to the public when singularly

presented, and similarities are given more weight than differences.[24]

There are no visual distinctions between the marks on defendant's goods and the Chanel

trademarks, as they are virtually identical.  The various items offered for sale on defendant's

---

[19] *Team Tires Plus, Ltd. v. Tires Plus, Inc.*, 394 F.3d 831, 832 (10th Cir. 2005).

[20] *King of the Mountain Sports, Inc. v. Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999).

[21] *Id.*; *Team Tires Plus*, 394 F.3d at 833.

[22] *Team Tires Plus*, 394 F.3d at 832-33.

[23] *Hodgdon Powder Co.*, 497 F. Supp. 2d at 1230 (quoting *King of the Mountain Sports*, 185 F.3d at 1090).

[24] *King of the Mountain Sports*, 185 F.3d at 1090.

websites are labeled as Chanel products and bear counterfeit Chanel trademarks.  The description next to the pictures of several of the items indicates that the item "[c]omes with Chanel box and authenticity paperwork."[25]  Given that the items are sold on a website and thus are not available for physical inspection, it would be difficult for a consumer to distinguish between actual Chanel goods and defendant's counterfeit goods.  Therefore, this factor weighs heavily in favor of likelihood of confusion.

### 2.      Intent of the Alleged Infringer in Adopting Its Mark

In determining defendant's intent in adopting this mark, the court considers whether the defendant "intended to derive a benefit from plaintiff's reputation or goodwill."[26]  In addition, "[p]roof that a defendant chose a mark with the intent of copying the plaintiff's mark may, standing alone, justify an inference of likelihood of confusion."[27]  If the evidence were to indicate, however, that "a defendant did not intend to derive benefit from a plaintiff's existing mark, this factor weighs against the likelihood of confusion."[28]  All doubts are resolved against a defendant who adopts a mark similar to another already established in the marketplace, because she does so at her own peril: the court presumes that she can accomplish her purpose because the public will be deceived.[29]

The court finds that defendant intended to derive benefit from Chanel's reputation and goodwill.  Defendant marketed goods which were virtually identical to Chanel goods.  The

---

[25] Plaintiff's Motion for Summary Judgment Ex.  E (Doc. 19-6) at  1.

[26] *King of the Mountain Sports*, 185 F.3d at 1091.

[27] *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 973 (10th Cir. 2002).

[28] *Hodgdon Powder Co.*, 497 F. Supp. 2d at 1230.

[29] *Sally Beauty Co.*, 304 F.3d at 973.

websites state that goods are actual Chanel products and come with Chanel certificates of authenticity.  In actuality, defendant's goods were intentional copies of Chanel's authentic merchandise.  It is obvious that defendant was trading on Chanel's name and using its reputation for her own commercial benefit.  Moreover, defendant continued to offer for sale counterfeit goods after Chanel sent her a cease and desist letter which informed defendant that such action was illegal.   Thus, this factor also weighs in favor of likelihood of confusion.

### 3.    Evidence of Actual Confusion

While evidence of actual confusion may be the best indication of likelihood of confusion, it is not necessary to prevail on a trademark infringement claim.[30]  Chanel alleges that trademark and counterfeiting pose a serious threat to its business, but it has not presented any evidence of actual confusion.[31]  As no actual evidence has been presented, the court considers this factor as neutral regarding the likelihood of confusion.

### 4.    Similarity in Products and Manner of Marketing

The fourth factor considers the similarities and differences in the use and marketing of the various goods sold by the two parties.  Typically, "[t]he greater the similarity between the products and services, the greater the likelihood of confusion."[32]  Courts separately consider (1) the similarity of products and (2) the similarity in the manner of marketing the products.[33]

---

[30] *Id.* at 974.

[31] Memorandum in Support of Summary Judgment (Doc. 19) at 5.

[32] *Universal Money Ctrs., Inc. v. Am. Tel. & Tel. Co.*, 22 F.3d 1527, 1532 (10th Cir. 1994); *King of the Mountain Sports*, 185 F.3d at 1092.

[33] *Universal Money Ctrs.*, 22 F.3d at 1532.

Converging marketing channels increase the likelihood of confusion.[34]

Defendant markets counterfeit products that are identical to Chanel's products. They bear Chanel marks and exhibit the same style and color scheme. Even more persuasive is the fact that both genuine Chanel products and defendant's products can be purchased via the internet. Therefore, prospective customers could be easily confused when using the internet to shop for Chanel products and inadvertently purchase defendant's counterfeit products instead of genuine Chanel products. This factor also weighs in favor of likelihood of confusion.

### 5.   Degree of Care Likely to be Exercised by Purchasers

A consumer exercising a high degree of care in selecting a product reduces the likelihood of confusion.[35] Buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse.[36]

Defendant offered various products for sale on 100ibuy.com and usaEbuy.com. Key chains ranged from $14.80 to $18.60 in price. Wallets and handbags ranged from $48 to $110 in price, and eyeglass frames were offered for $108. While a consumer may take little to no consideration in purchasing an inexpensive key chain, they would probably at least pause before making a purchase of over $100. Upon review of the websites, the court finds that a majority of the items offered for sale were wallets and handbags. While not a large amount of money, the court finds that consumers would take at least some care to inspect the products retailing for $48 or more. This degree of care would be lessened by the purchasers inability to inspect the product

---

[34] *Beer Nuts, Inc. v. Clover Club Foods, Co.*, 711 F.2d 934, 941 (10th Cir. 1983).

[35] *King of the Mountain Sports*, 185 F.3d at 1092; *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 557 (10th Cir. 1998).

[36] *Sally Beauty Co.*, 304 F.3d at 975.

as they were only offered online.  Moreover, defendant's claims of Chanel authenticity may have induced false trust on behalf of purchasers.  All of these considerations suggest that this factor weighs in favor of likelihood of confusion.

> ### 6.       Strength or Weakness of the Marks

"The stronger the mark, the greater the likelihood that encroachment on the mark will cause confusion."[37]  The court considers two different aspects of strength when assessing the relative strength of trademarks: conceptual strength and commercial strength.[38]  Conceptual strength measures the mark's placement on a distinctiveness spectrum in an attempt to determine whether the mark is fanciful, arbitrary, suggestive, descriptive, or generic.[39]  Arbitrary, fanciful and suggestive marks are the strongest and are deemed inherently distinctive and entitled to protection.[40]  Suggestive marks "suggest [] rather than describe [] a characteristic of the product and require [] the consumer to use imagination and perception to determine the product's nature."[41]  Arbitrary marks use common words, symbols, and pictures that do not suggest or describe any quality or characteristic of the goods or services.[42]  Fanciful marks are words invented or selected for the sole purpose of functioning as a trademark.[43]  Commercial strength

---

[37] *Hodgdon Power Co.*, 497 F. Supp. 2d at 1231 (quoting *Sally Beauty Co.*, 304 F.3d at 975).

[38] *Id.*

[39] *Id.*

[40] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992).

[41] *First Sav. Bank v. First Banking System, Inc.*, 101 F.3d 645, 655 (10th Cir. 1996).

[42] *King of the Mountain Sports*, 185 F.3d at 1093.

[43] *Id.*

measures the marketplace's recognition of the value of the mark.[44]   A commercially strong mark is one that is rarely used by anyone other than the owner of the mark; a weak mark is one that is often used by other parties.[45]

While characterization of a mark along the conceptual strength spectrum is generally a question of fact,[46] defendant does not dispute plaintiff's characterization of its marks as arbitrary or fanciful.  Chanel's marks are very distinctive and uniquely designed to signify the maker of the product and its reputation for high quality merchandise.  There are no similar marks currently being used in the market place today.  Thus, Chanel's trademarks are conceptually strong.

The Chanel trademarks are also commercially strong.  The substantial advertisement and promotion of the Chanel brand has heightened marketplace recognition of the marks.  Chanel is widely recognized as a prestigious, high fashion brand by the consuming public and enjoys sales in the hundreds of millions of dollars.  As stated above, no competitor uses similar marks and Chanel has never abandoned its unique trademarks.  Thus, the commercial and conceptual strength of the Chanel trademarks suggest that this factor also weighs in favor of a likelihood of confusion.

Considering all six factors, the court finds a likelihood of confusion exists.  In addition, defendant does not dispute that there is a likelihood of confusion.  Accordingly, because plaintiff has established it has valid and protected trademarks, defendant used similar marks in commerce, and defendant's use of the similar marks is likely to cause confusion, the court holds plaintiff is entitled to summary judgment on Count I of its Complaint.

---

[44] *Hodgden Power Co.*, 497 F. Supp. 2d at 1231.

[45] *First Sav. Bank*, 101 F.3d at 653-54.

[46] *Big Dog Motorcycles, L.L.C. v. Big Dog Holdings, Inc.*, 402 F. Supp. 2d 1312, 1336 (D. Kan. 2005).

**V.      Count II – False Designation of Origin Pursuant to § 43(a) of the Lanham Act;**

**Counts III – Common Law Trademark Infringement; and Count IV – Common**

**Law Unfair Competition**

While a trademark infringement claim pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114 protects only registered marks, Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, affords protection against a wide variety of competition, including infringement of both registered and unregistered marks.[47]  Specifically, Section 43(a) prohibits, in connection with any good or service, the unauthorized use or misleading representation of any word, term, name, symbol, or false designation of origin in a way that is "likely to cause confusion, or to cause mistake, or to deceive."[48]  To determine the likelihood of confusion in a Section 43(a) action, the court examines the same six factors as in a trademark infringement action brought under Section 32(1).[49]

The common-law torts of trademark infringement and unfair competition are similar actions to a claim under Section 43(a) and seeks to prevent confusion between parties' products. To prevail under either theory, plaintiff must prove that it owns a valid, protectable mark, that defendant used that mark in commerce, and that defendant's mark is so similar to plaintiff's it is likely to cause consumer confusion.[50]  Courts have noted that trademark infringement is a type of

---

[47] *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. at 767.

[48] 15 U.S.C. § 1125(a)(1)(A).

[49] *John Allan Co. v. Craig Allen Co. L.L.C.*, 540 F.3d 1133, 1137-38 (10th Cir. 2008)

[50] *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1219 (10th Cir. 2004)(citing standard for common-law trademark infringement claim); *Scholfield Auto Plaza, L.L.C. v. Carganza, Inc.*, 979 P.2d 114, 148 (Kan Ct. App. 1999) (citing standard for common-law unfair competition claim).

unfair competition and that the two claims have virtually identical elements.[51]  Therefore, courts

find it proper to address the claims together as an action brought under Section 43(a).[52]

As discussed in detail above, the court finds that plaintiff has a protectable interest in its

nine trademarks, that defendant used these trademarks in commerce, and that defendant's

counterfeit goods would likely cause confusion among consumers.  Defendant's goods are exact

replicas of authentic Chanel products and defendant has blatantly copied Chanel's nine

registered trademarks.  Therefore, as the analysis is the same for all counts, the court holds that

plaintiff is also entitled to summary judgment on Counts II, III and IV of its Complaint.

## VI.   Relief Requested

Plaintiff seeks a permanent injunction to enjoin the defendant from using any of Chanel's

trademarks and to enjoin the defendant from taking any action that would in any way falsely

associate the defendant or her goods with Chanel and its products.  Plaintiff also seeks statutory

damages under 15 U.S.C. § 1117(c) in the amount of $216,000, attorney's fees in the amount of

$10,773.50, investigative fees in the amount of $752.50, and costs in the amount of $425.[53]

### A.   Permanent Injunction

The court may grant injunctions "according to the principles of equity and upon such

terms as the court may deem reasonable to prevent the violation of any right of the registrant of a

---

[51] *Utah Lighthouse Ministry v. Foundation for Apologetic Information and Research*, 527 F.3d 1045, 1050 (10th Cir. 2008).

[52] *Id.*

[53] Plaintiff's counsel state in their Memorandum in Support of their Motion for Summary Judgment that a total of $10,773.50 has been incurred in attorneys fees and $752.50 in investigative fees.  These amounts total $11,526.  Counsel then states in their conclusion that they request $11,951 in reasonable attorney's fees, which includes the $752.50 in investigative fees.  The court cannot understand the discrepancy between these two figures. Therefore, the court elects to proceed under the lesser amount, $11,526.

[registered] mark . . . ."[54]  "An injunction should issue only where the intervention of a court of equity 'is essential in order effectually to protect property rights against injuries otherwise irremediable.'"[55]

According to well established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.[56]  Plaintiff must demonstrate: (1) that is has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.[57]  The court has discretion to grant or deny permanent injunctive relief.[58]

Generally, trademark infringement, by its very nature, carries a presumption of harm.[59] The court finds that plaintiff has shown that it has suffered irreparable injury at the hands of the defendant and has no other adequate remedy at law.  Chanel has invested extensive time and resources in its trademarks which are intangible assets representing the reputation and goodwill of the company.  As discussed above, defendant's acts of producing and selling counterfeit items causes confusion among purchasers, which, in turn, weakens Chanel's reputation and brand image.  The court also notes that defendant continued to sell counterfeit Chanel goods despite the

---

[54] 15 U.S.C. § 1116(a).

[55] *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982).

[56] *eBay v. MercExchange*, 547 U.S. 388, 391 (2006).

[57] *Id.*

[58] *Id.*

[59] *See Health Ins., Ass'n of America v. Novelli*, 221 F. Supp. 2d 23, 28 (D.D.C. 2002).

issuance of a cease and desist letter.  Defendant also failed to meaningfully participate in this action, as she ignored discovery and mediation requests.  Therefore, the court finds that defendant's continuing disregard for plaintiff's rights demonstrates that defendant will continue to infringe on plaintiff's right's, absent an injunction.  The court further finds that an injunction would not harm others, and that the public interest favors protecting against further violation of federal trademark law.

### B.        Statutory Damages

Under trademark law, a plaintiff may elect to recover an award of statutory damages for actions involving the use of a counterfeit mark at any time before final judgment is entered.[60] Statutory damages are appropriate in cases when the information needed to prove actual damages is within the infringer's control and is not disclosed.[61]  Therefore, a plaintiff may recover statutory damages whether or not there is adequate evidence of the actual damages suffered by the plaintiff or of the profits reaped by defendant.[62]  In its discretion, a court can award not less than $1,000 but not more than $200,000 per counterfeit mark per type of good sold for non-willful violations, and up to $2,000,000 per counterfeit mark per type of good for willful trademark infringement.[63]  The court is given broad discretion to determine the amount of statutory damages to be awarded.[64]  Willful infringement requires "knowledge that the

---

[60] 15 U.S.C. § 1117(c).

[61] *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007).

[62] *Peer Int'l Corp. v. Pausa Records, Inc.*, 909 F.2d 1332, 1337 (9th Cir. 1990).

[63] 15 U.S.C. § 1117(c).

[64] *Peer Int'l Corp.*, 909 F.2d at 1336.

defendant's conduct constitutes [trademark] infringement.[65]

The court concludes that defendant willfully infringed on Chanel's trademarks. Plaintiff sent defendant two cease and desist letters; one on June 5, 2007 and another on June 18, 2007. These letters informed defendant that Chanel was the sole owner of its trademarks and that defendant's conduct of offering for sale counterfeit goods violated state and federal law. The letters also stated that defendant could be liable for civil and criminal penalties as a result of her actions. Defendants only response was an email on June 5, 2007 stating that her website was not selling any Chanel products and thanking Chanel for reminding them of trademark right issues. Defendant continued to sell counterfeit goods after she was put on constructive notice that her conduct constituted infringement and was unlawful. Additionally, by blatantly copying Chanel marks, defendant deliberately profited from plaintiff's reputation and goodwill. Defendant also stated on her website that products came with Chanel certificates of authenticity and compared Chanel prices to her listed prices. Based on this evidence, the court can only conclude that defendant willfully infringed upon Chanel's trademarks.

In determining a just award, the court also considers the fact that defendant has failed to participate meaningfully in this case. Defendant did not respond to Chanel's discovery requests, and failed to appear for her deposition.[66] Therefore, plaintiff was unable to gather any evidence regarding the size of defendant's operation, its duration, or her profits. The court does know that defendant operated two websites over the course of many months which offered numerous counterfeit Chanel goods for sale. Moreover, the court notes that defendant's response to the

---

[65] *Id.* at 1336, n.3.

[66] Chanel's Memorandum in Reply to Defendant's Memorandum in Opposition to Chanel's Motion for Summary Judgment (Doc. 27) at 3.

instant motion was no more than a series of hypothetical questions based on defendant's own speculation.  While the court is mindful that defendant is proceeding *pro se*, the court still requires her to follow its local rules.  Plaintiff has failed to do so in this case.

Finally, the court considers the deterrent effect of its order.  Defendant operated a sophisticated counterfeiting operation which offered numerous items for sale via the Internet.  It is without a doubt that defendant garnered profits based on her exploitation of Chanel trademarks.  Thus, the court finds it appropriate to award an amount of statutory damages that will deter defendant, as well as others, from ever participating in similar conduct.[67]

Plaintiff has requested $216,000 in statutory damages.  It reaches this amount by suggesting the court begin with a baseline statutory award of $1,000 ($500 per Internet website operated by the defendant), treble it to reflect defendant's willfulness, and then double the product for the purpose of deterrence.  The result would be $6000 per registered trademark counterfeited (9) per type of good sold (4 - handbags, wallets, key chains, and eyeglass frames).

The court disagrees with plaintiff's proposed statutory award and method of calculation.  First, the court notes that  § 1117(c) does not contemplate the number of retail outlets when establishing the amount of damages.  Also, while § 1117(a) provides for trebling based on a finding of willfulness, § 1117(c) only raises the award to a maximum of $2,000,000 per infringement.  Finally, the court notes that while the nine Chanel trademarks relate to various types of goods, they do not each cover handbags, wallets, key chains and eyeglass frames.  Therefore, the nine trademarks cannot be multiplied by all four types of goods sold.

The court finds that a more appropriate damages calculation would be an award of $7,500,

---

[67] *See Magna-RX, Inc. v. Troy Holley, et al.*, No. 05-3545-PHX, 2008 WL 5068977, at *3 (D. Ariz. November 25, 2008)(stating statutory damages may be appropriate to deter future infringements).

per counterfeit mark, per type of good sold.  Accordingly, the court calculates the statutory

damages as follows:

- Registration No. 1,734,822: $7,500 x 2 (handbags and wallets) =   $15,000

- Registration No. 1,314,511: $7,500 x 2 (handbags and wallets) =   $15,000

- Registration No. 3,022,708: $7,500 x 1 (handbags)[68] =                $ 7,500

- Registration No. 3,025,934: $7,500 x 1 (handbags) =                     $ 7,500

- Registration No. 0,626,035: $7,500 x 1 (handbags) =                     $ 7,500

- Registration No. 1,347,677: $7,500 x 2 (handbags and wallets) =   $15,000

- Registration No. 1,733,051: $7,500 x 2 (handbags and wallets) =   $15,000

- Registration No. 1,501,898: $7,500 x 1 (key chains) =                   $ 7,500

- Registration No. 3,025,936: $7,500 x 1 (eyeglass frames) =         <u>$ 7,500</u>

$97,500

Therefore, the court awards plaintiff $97,500 in statutory damages pursuant to 15 U.S.C. §

1117 (c).  The court finds this award to be fair and reasonable when considering as a whole the

circumstances of the case.

### C.    Attorneys' Fees & Other Costs

Chanel has also requested that the court award it reasonable attorneys' fees.  Under 15

U.S.C. § 1117(a), attorneys fees are awarded to the prevailing party "in exceptional cases."

Exceptional cases are limited to those where it can be shown that defendant willfully,

fraudulently, maliciously, or deliberately infringed on plaintiff's mark.[69]  As such, "a plaintiff

---

[68] The court notes that this trademark also covers key chains. Even so, plaintiff has offered no evidence of key chains on defendant's two websites bearing this trademark.  Therefore, the court only considers handbags as the type of good sold in violation of this specific trademark.

[69] *W. Diversified Servs., Inc. v. Hyundai Motor Am., Inc.*, 427 F.3d 1269, 1273 (10th Cir. 2005).

22

must ordinarily show that the defendant intended to benefit from the goodwill or reputation of the trademark holder."[70]  The "deliberate adoption of a similar mark may lead to an inference of intent to pass off goods as those of another."[71]  While that analysis is typically used to determine the likelihood of confusion, it is appropriate to apply that same presumption in determining whether a defendant intended to benefit from the goodwill of another.[72]

In this case, defendant sold counterfeit Chanel goods via the Internet.  She deliberately copied Chanel's trademarks and labeled the goods as genuine Chanel products.  Her intent throughout the process was to gain a profit by exploiting the Chanel brand.  The court finds that defendant deliberately, willfully, and fraudulently infringed upon Chanel's trademarks for her own personal gain.  Therefore, plaintiff is entitled to an award of attorneys' fees pursuant to 15 U.S.C. § 1117(a).

Chanel has submitted that its counsel spent approximately 35 hours in this case in connection with the investigation oversight and litigation, as set forth in the affidavits of attorneys Stephen Gaffigan and Sarah Lepak.  Chanel's counsel charged the rates of $350.00 and $235.00, respectively, per hour for their services, totaling $10,773.50.  In considering the reasonableness of the attorneys' fees associated with this case, the court notes that this action was filed in the Kansas City Division and involves complex federal trademark infringement issues.  Furthermore, the unusual circumstances of this case lead the court to find that plaintiff's requested fees are reasonable and fair.  Chanel is therefore entitled to recover $10,773.50 in attorney's fees pursuant to 15 U.S.C. § 1117(a).

---

[70] *Id.* at 1274.

[71] *Beer Nuts, Inc.*, 805 F.2d at 927.

[72] *W. Diversified Servs.*, 427 F.3d at 1275.

23

Investigative charges are also recoverable, as long as the investigator acted under the direction of an attorney.[73]  In this case, Chanel incurred investigative charges in the amount of $752.50; these costs were necessary to uncover the information regarding defendant's activities. Therefore, Chanel is entitled to recover these costs.  Chanel may also recover the $425.00 in costs it incurred in this action, including the $350.00 filing fee and the $75.00 process server fee.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 19) is hereby GRANTED.

**IT IS FURTHER ORDERED** that defendant is permanently enjoined from using any of Chanel's marks and from taking any action that would in any way falsely associate the defendant or her goods with Chanel and its genuine products or cause confusion as to the source of the defendant's products.

**IT IS FURTHER ORDERED** that the court shall award Chanel $97,500.00 in statutory damages, attorneys' fees in the amount of $10,773.50, investigative fees in the amount of $752.50, and costs in the amount of $425.00 against defendant Pu.

Judgment shall be entered in favor of plaintiff in accordance with this order.

**IT IS SO ORDERED.**

Dated this 17th day of March, 2009, at Topeka, Kansas.

<u>s/ K. Gary Sebelius</u>
K. Gary Sebelius
U.S. Magistrate Judge

---

[73] *Louis Vuitton S.A.*, v. Downtown Luggage Center, 706 F. Supp. 839, 842 (S.D. Fla. 1988).